**STATE of Missouri, Respondent,**

v.

**Lester V. COURTER, Appellant.**

**Lester V. COURTER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 39606.**

Missouri Court of Appeals, Western District.

May 22, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 1990.

Application to Transfer Denied Sept. 11, 1990.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and CLARK and BERREY, JJ.

CLARK, Judge.

Lester V. Courter was convicted by a jury of the offense of sodomy and he was sentenced to a term of fifteen years. He appeals that conviction and, concurrently, the order which denied his motion under Rule 29.15 for post-conviction relief. We reverse the conviction thereby rendering it unnecessary to consider issues raised in connection with the Rule 29.15 motion.

The charge against appellant was based on the allegations that at two or more times in 1986, appellant had fondled and stimulated the penis of then five or six year old Charles Bennett, referred to as appellant's grandson.[1] The abuses allegedly occurred when Charles was left with appellant by Paul and Vickie Shipley for overnight visits.

The direct evidence as to the offenses came from in-court testimony by Charles and from two videotaped interviews of Charles conducted before trial by a deputy juvenile officer. The video tapes were played for the jury, one before Charles testified in person, and one following his testimony. Appellant testified in his own defense and denied any improper conduct with Charles.

The dispositive issue on this appeal, raised by appellant in his first point of trial error, concerns testimony by Danny Shipley, another stepson of appellant, who was allowed by the court to testify, over appellant's objection, that in 1963 or 1964 when Danny was five or six years of age, appellant had forced sex on him and other children by placing his mouth on their genitals and by forcing them to fondle appellant's penis. Danny Shipley was twenty-nine years of age at the time of trial, some twenty-three or twenty-four years after the alleged events which were the subject of the witness's testimony.

Appellant was aware before trial of the state's intention to call Danny Shipley as a witness and also the prospect that the state would call other family members to testify that appellant had the reputation of a homosexual and that he had a "predisposition for little boys." Appellant filed a motion in limine to exclude this evidence as inadmissible because it constituted proof of crimes not charged against appellant, because the incidents with Danny, if they did occur,

---

1. Charles Bennett was not in fact related to appellant. Charles was the son born of a prior marriage of Vickie Shipley who had subsequently married appellant's stepson, Paul Shipley.

were too remote to have probative value in the current prosecution and for various other reasons. The trial court overruled appellant's motion in limine and his objections to the testimony at trial and the evidence was admitted. The state contended at trial, and it reasserts here, that the evidence in question was admissible under the common scheme or plan exception to the rule precluding evidence of other uncharged crimes unrelated to the offense for which the defendant is being prosecuted.

■ There is, of course, no question that the testimony by Danny Shipley was highly prejudicial to appellant and, absent some recognized exception, it should have been excluded under the rule barring introduction of evidence of other crimes for which the defendant is not on trial. *State v. Shaw*, 636 S.W.2d 667, 671–72 (Mo.banc), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). The showing of prior sexual deviation is highly prejudicial to a person held to answer sexual charges and even where an objection to such evidence is sustained, a cautionary instruction by the judge is of dubious value in erasing the suggestion from the jury's mind. *State v. Alexander*, 729 S.W.2d 467, 470 (Mo.banc 1986) (Blackmar, J., dissenting).

The common scheme or plan exception to the rule barring evidence of uncharged offenses has a well defined origin and express limits, but a checkered history of application in appellate decisions. In *State v. Lue*, 598 S.W.2d 133, 137 (Mo.banc 1980), the court restated the traditional bounds of the exception: "Among the exceptions to this rule [denying use of evidence of other crimes by the accused] is that evidence of other crimes is competent when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish proof of the other." Crimes are not so related if not so blended or connected that the investigation of one involves an inquiry into the other. *Id.*

The more familiar application of the common scheme or plan exception occurs where a series of offenses are committed, one for the purpose of facilitating another.

Thus, in *State v. O'Neal*, 618 S.W.2d 31 (Mo.1981), evidence that the defendant burglarized a residence and obtained a gun was held admissible where the purpose of the burglary was to obtain the weapon to use in a subsequent robbery and homicide for which the defendant was on trial.

A similar application of the common scheme or plan exception occurs where a series of crimes are so linked together in time and circumstances with the crime charged that one cannot be fully shown without proving the other. This was the situation in *State v. Martin*, 651 S.W.2d 645 (Mo.App.1983). There, the state was allowed to show, in a case of a contract murder, that the defendant had contemporaneously discussed with an intermediary engaging the third party to also steal an automobile. Evidence of the proposed auto theft showed a common plan among defendant, Wood, the intermediary, and Murphy, the third party, to engage in criminal conduct.

In contrast to the above examples which accurately reflect the sense of the common scheme or plan exception, a number of cases nominally admit evidence under the exception when in fact the purpose of the evidence is to show motive or to prove the identity of the accused. For example, in *State v. Kenley*, 693 S.W.2d 79 (Mo.banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986), the court approved, under the common scheme or plan exception, proof in a prosecution for capital murder that the defendant bought a gun, practiced using it, robbed business establishments and kidnapped women for sexual purposes. But, as the opinion states, the evidence was proper because it "evidences a common scheme or plan *pointing to Defendant* as the participant in the robbery which resulted in Felts' death." *Id.* at 82 (Emphasis supplied). As is apparent, evidence of Kenley's other crimes was admissible, not because components of a common scheme or plan, but because it tended to prove the identity of the defendant as the guilty party.

In *State v. Mallett*, 732 S.W.2d 527 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct.

309, 98 L.Ed.2d 267 (1987), the defendant was charged with the murder of a highway patrol officer. One issue on appeal was the admission of evidence that in the month before the killing, Mallett had robbed a jewelry store in Texas. The court observed that evidence of uncharged crimes committed by the accused is admissible "when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime." *Id.* at 534. Proof of the earlier robbery was found to be admissible in *Mallett*, not under the common scheme or plan exception, but because it established the motive for the defendant's conduct in his attempt to evade capture by the officer.

■ It is appropriate to note that the common scheme or plan exception embraces not only crimes which are sequentially linked, but also to crimes which are committed in such a similar fashion that the inference follows they were the work of the same individual. These are the "modus operandi" type cases where identical methodology earmarks separate crimes as the handiwork of the accused because the acts bear a striking similarity. *State v. Clay*, 686 S.W.2d 516, 518 (Mo.App.1985).

■ Returning now to the present case, no argument may be made that evidence of appellant's prior sexual misconduct was admissible to prove identity, to establish motive or that the events separated by more than two decades were so related to each other and so inseparably connected that proof of one necessarily involved proving the other. The purpose of the evidence was, quite apparently, to convince the jury that Courter had a propensity toward deviate sexual behavior and, if he had earlier performed such acts, it was more likely that the victim's account was true. In short, the contested evidence was offered to bolster the believability of the state's case.

■ Particularly in sex crime cases, the appellate decisions of this state lack any well defined limits to the use of evidence of other, similar criminal acts by the accused, perhaps in part because the variations in conduct are so great. Some general principles, however, are discernable. First, no case in Missouri has yet adopted a rule of admissibility, prevalent in some other states, and labeled the sexual aberration exception. Under this doctrine, evidence of any prior sexual misconduct in the nature of unconventional sex by the accused may be shown to establish that the accused possesses depraved sexual instincts. See discussion in *State v. Taylor*, 735 S.W.2d 412, 417 (Mo.App.1987). To admit such evidence in Missouri, the state must establish that evidence of prior sex crimes by the defendant is within one of the general exception categories, i.e., motive, intent, absence of mistake or accident, identity or common scheme or plan. It is not enough to simply argue that prior criminal acts demonstrate a propensity to repeat conduct.

■ Second, when the evidence of other crimes is conditionally admissible under one of the stated exceptions, it is to be allowed only when the prejudicial effect of the evidence is outweighed by its probative value, the balancing of effect and value to be within the sound discretion of the trial court. *State v. Shaw*, 636 S.W.2d at 672.

A review of numerous appellate decisions in this state where evidence of a prior sex offense has been held admissible in prosecution for a current crime indicates a disposition of liberality in forcing the facts to conform to the mold of the general exception categories, most frequently the common scheme or plan. Thus, for example, in *State v. Kerr*, 767 S.W.2d 344 (Mo.App. 1989), the defendant was charged with having committed sodomy upon a three and one-half year old girl by digital manipulation of her vagina. The state introduced evidence from defendant's estranged wife that some two years earlier she had observed her husband rubbing his penis with the hand of a small girl. The court approved the use of this evidence under the common scheme or plan exception despite the obvious facts that the events were sig-

nificantly separated in time and shared no elements of commonality except that the offenses involved the defendant and a young girl.

We exclude from criticism under this subject and classify separately those sex crimes in which the prior offense was perpetrated upon the same victim. The court pointed out in *State v. Graham,* 641 S.W.2d 102, 105 (Mo.banc 1982), that prior sexual intercourse or intimacy between the defendant and victim indicates a sexual desire for the victim and tends to establish motive. It may also be argued that where the same victim is involved in each event, a sufficient pattern or link exists to meet the conditions of the common scheme or plan exception. It is enough for the purpose of this opinion to say that this is not such a case and it is unnecessary to distinguish *Graham* and other like cases which have approved the admission of evidence of other uncharged sex crimes.

■ An additional factor which requires consideration in weighing the admissibility of other uncharged crimes evidence is the period of time separating the previous act or acts and the offense under current prosecution. In *State v. Cutler,* 499 S.W.2d 387 (Mo.1973), the charge was that the defendant had arranged to have her daughter perform certain lewd and indecent acts which were photographed. Over defendant's objection, the state was allowed to present evidence that some seven or eight years before, the defendant had received money from another daughter who posed for photographs by the same man. The conviction was reversed on the ground that remoteness precluded use of the evidence under the common scheme or plan exception.

The facts of *Cutler* were, but for the lapse of time between the events, well within the common scheme or plan exception utilized in numerous Missouri decisions to approve use of evidence of uncharged crimes. The defendant had obtained money from the same photographer in both instances, the same purpose to use young girls in lewd postures was the object and in each case, the defendant had procured her own daughters as subjects. Despite this, however, the case stands for the proposition that linkage to a common scheme or plan will cease upon passage of time between the events. Unfortunately, this feature has been overlooked in most if not all of the decisions since *Cutler* and has further clouded the issue of admissibility of questioned and prejudicial evidence in sex crimes cases.

Again returning to the subject case, we perceive no factual basis upon which the state may validly contend that the challenged evidence by Danny Shipley was admissible under the common scheme or plan exception. Apart from this, however, under *Cutler,* proof of events which occurred twenty-three or twenty-four years prior to the date of the current alleged offense are time barred under the remoteness doctrine. Evidence of aberrant sexual conduct between appellant and Danny Shipley was prejudicial to appellant, it was inadmissible under the common scheme or plan exception to the rule barring evidence of uncharged crimes and it also was too remote in point of time to be of probative value in the subject prosecution. The trial court erred in admitting the evidence over appellant's objection. The conviction must therefore be reversed.

Because this case is to be remanded and may be retried, it is necessary to consider an additional point of error raised by appellant. He argues that the court erred when it permitted the state to call the victim, Charles Bennett, as a witness at trial after first introducing before the jury the victim's videotaped statement.

■ The point is squarely ruled by *State v. Seever,* 733 S.W.2d 438 (Mo.banc 1987). Under § 492.304, RSMo 1986, a visual and aural recording of the statement by a child under the age of twelve who is alleged to be the victim of an offense under Chapters 565, 566 or 568 of the Missouri Statutes is admissible in evidence. The state, however, is limited to use of the video tape, if it elects to proceed with such evidence, and may not enhance or bolster the recorded statement by also calling the victim to testify at trial. Here, the evidence from the

video tape and from the witness stand were essentially duplicative and when presented in multiple form gave the state an undue advantage. We reject the state's argument that some dissimilarities between the video tape statement and the in-court testimony rendered both forms of evidence admissible. The live testimony by the victim served to elaborate upon the recorded statement and amounted to exactly the type of rehabilitation and bolstering which *Seever* condemns. On retrial a choice need be made as to which form the victim's direct testimony will take. This is, of course, subject to the defendant's opportunity to use available evidence and to any opening for use of statements which cross-examination may expose.

The conviction is reversed and the case is remanded for a new trial.

All concur.