STATE of Missouri, Respondent,

v.

James W. BARNARD, Jr., Appellant.

James W. BARNARD, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. WD 42632.

Missouri Court of Appeals,
Western District.

Nov. 26, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 24, 1991.

Application to Transfer Denied
Jan. 28, 1992.

David S. Durbin, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

James W. Barnard, Jr. appeals from his convictions for sodomy, § 566.060, RSMo 1986, and for child abuse, § 568.060, RSMo 1986, for which he was sentenced to fifteen and seven years respectively, said sentences to run consecutively, and the denial of his motion for post-conviction relief. He presents five points in this appeal, claiming that the trial court erred in: (1) admitting evidence of crimes and offenses not charged and allowing the prosecution to refer to such incidents during the opening statement; (2) failing to dismiss the cause or remand it for preliminary hearing because Barnard was denied his right to counsel when he had to proceed without legal assistance at the arraignment and preliminary hearing; (3) overruling his motion to dismiss for lack of specificity in the allegations, denying him his right to a unanimous jury trial as it was impossible to tell whether all jurors agreed with respect to any one incident of sodomy or abuse; (4) refusing to give Instructions B and C, offered by Barnard and in giving Instruction No. 4; and (5) failing to declare a mistrial after the judge read an incorrectly worded instruction to the jury. The judgment of conviction is affirmed. The appeal from the denial of the post-conviction motion is dismissed.

In 1981 James Barnard married a woman who had three children from a previous marriage, B.C. and J.C., both boys, and S.C., a girl. The marriage lasted until 1988 when Barnard's wife walked out on him because of his drinking, his cruelty and his violence. After the separation B.C. and J.C. told their mother that Barnard had abused them sexually on many occasions. They had been afraid to tell about the abuse before the separation because of the threats Barnard had made to them.

Barnard began abusing the boys when B.C. was eight and J.C. was eleven. The family was living in a trailer at the time. B.C. and J.C. slept in a small camper outside the trailer. This is where the abuse occurred. Testimony by B.C. and J.C. developed the course of Barnard's conduct. Barnard initiated the commission of acts of oral sodomy upon the boys and directed the boys to perform those same acts upon him. J.C. resisted, but B.C. complied out of fear. Barnard punished the boys by pulling on their genitals. Another punishment devised by Barnard consisted of his putting vaseline on a toothbrush handle and inserting it in the boys' anuses. Barnard called the boys vile names. He hit them in their genitals and beat them with a belt. Sometimes he would hold their faces in a pillow, attempting to smother them. Barnard told the boys that they would get AIDS if they did not comply with his requests.

In 1986, the family moved to an earth-contact home where the boys had a bedroom in the house. Barnard's abuse of B.C. continued. In November, 1986, Barnard broke his arm and could not work. He was at home more than usual and began to drink heavily. His abuse of B.C. escalated. He began punishing B.C. by violating him anally with a plunger handle covered with Vaseline.

In May, 1988, B.C. came home from school sick one day. Barnard had been drinking and asked B.C. to bring him a beer. Barnard then committed an act of

sodomy on B.C., sticking his penis into B.C.'s anus.

Barnard was charged by information filed January 10, 1989, which read:

JAMES W. BARNARD, JR., in violation of Section 566.060, RSMo, committed the Class D felony of sodomy, punishable upon conviction under Section 558.011.1(2), RSMo, in that between the dates of September 1, 1986 to August 21, 1987, in the County of Cass, State of Missouri, the defendant had deviate sexual intercourse with [B.C.], to whom defendant was not married and who was then less than fourteen years old.

COUNT II—JAMES W. BARNARD, JR., in violation of Section 568.060, RSMo, committed the Class C felony of abuse of a child, punishable upon conviction under Section 558.011(3) and 560.011, RSMo, in that between the dates of November 1, 1986 and November 30, 1986, in the County of Cass, State of Missouri, the defendant knowingly inflicted cruel and inhuman punishment upon [B.C.], a child less than seventeen years old, by inserting a toothbrush into [B.C.'s] anus.

Barnard filed for a Bill of Particulars. The first amended Bill of Particulars described the offenses in more detail:

Count I, James W. Barnard had deviate sexual intercourse with [B.C.] by placing his mouth on [B.C.'s] penis between the dates of September 1, 1986 to August 31, 1987 at [B.C.'s] home, Rt. 3, Box 94, Peculiar, Missouri.

Count II, James W. Barnard abused [B.C.] by inserting a toothbrush into [B.C.'s] anus with his hand between the dates of November 01, 1986 and November 30, 1986, at [B.C.'s] home, Rt. 3, Box 196, Peculiar, Missouri.

The information was amended, conforming to the details in the Bill of Particulars.

Barnard appeared pro se at his arraignment. The court found that Barnard was indigent and appointed a public defender to represent him. The information was read to Barnard and he entered a plea of not guilty. Prior to this arraignment, Barnard was without counsel at his preliminary hearing. Barnard was tried by a jury and found guilty. He was represented by counsel at his trial.

The record also reflects that Barnard filed a 29.15 motion which, after an evidentiary hearing, was denied. Barnard appealed from the denial of this motion; the notice of appeal was filed November 20, 1990, with this court. An examination of Barnard's brief, however, reveals no point of error challenging the denial of the 29.15 motion. As the brief assigns no claim of error as to the denial of the 29.15 motion, Barnard has abandoned his 29.15 appeal and the 29.15 appeal is dismissed. State v. Gillispie, 790 S.W.2d 519, 520 (Mo. App.1990); State v. Mayo, 784 S.W.2d 897 (Mo.App.1990).

Barnard's first point on direct appeal claims that the trial court erred in admitting, over objection, evidence of crimes and offenses not charged and in allowing the prosecuting attorney to refer to this evidence during her opening statement. Barnard claims that such evidence was irrelevant, immaterial and violative of his right to due process.

At trial B.C. testified to numerous incidents of sexual abuse, punishment and name-calling, beside the incidents for which Barnard had been charged. J.C., the victim's brother, also testified to Barnard's efforts to make J.C. take Barnard's penis in his mouth. J.C. also testified that Barnard may have placed his penis in J.C.'s anus when J.C. was five or six years old. J.C. testified that Barnard would make the brothers hold each other down while Barnard stuck a toothbrush handle in their anuses. He testified that Barnard physically abused him, hitting him in his stomach, mouth and genitals. J.C. also testified that Barnard called him names.

The boys' mother testified that Barnard was "physically violent to the kids." She stated that B.C. acted afraid of Barnard. She also testified that Barnard cursed at the boys a lot and called them names.

Generally, evidence of crimes and offenses, other than those for which a defendant is on trial, is inadmissible. State v. Courter, 793 S.W.2d 386, 388 (Mo.App.

1990). However, exceptions to the rule regarding inadmissibility exist. Such evidence is deemed admissible, "when it tends to establish motive, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime." *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). It is not enough to merely argue that such evidence of prior criminal acts demonstrates a propensity to repeat the conduct. *State v. Courter*, 793 S.W.2d at 389. Furthermore, such evidence, under one of the stated exceptions, will only be admissible on the condition that its probative value outweighs its prejudicial effect. *Id.* Barnard argues that the evidence does not fit any of the recognized exceptions and was highly prejudicial to him.

As the court noted in *State v. Kerr*, 767 S.W.2d 344, 345 (Mo.App.1989), the current trend is toward a policy of liberally allowing the admission of evidence of prior sex crimes under one of the exceptions to the inadmissibility rule. Missouri allows for such testimony under both the motive exception and the common scheme or plan exception. Evidence of a defendant's prior sexual abuse of the same victim is admissible under the motive exception. In *State v. Graham*, 641 S.W.2d 102 (Mo. banc 1982), the Missouri Supreme Court articulated the reason for allowing such evidence under the motive exception. It stated, "[p]rior sexual intercourse or intimacy between defendant and victim indicates sexual desire for the victim by defendant and tends to establish a motive...." *Id.* at 105; *See also State v. Courter*, 793 S.W.2d at 388.

Evidence of a defendant's sexual misconduct with other children in his custody or control is admissible under the common scheme or plan exception. *State v. Schaal*, 806 S.W.2d 659, 664 (Mo. banc 1991); *State v. Erickson*, 793 S.W.2d 377, 383 (Mo.App.1990); *State v. Taylor*, 735 S.W.2d 412, 417–18 (Mo.App.1987).

The Eastern District in *State v. Lachterman*, 812 S.W.2d 759 (Mo.App.1991), recently discussed the Missouri decisions on this topic. The court examined the cases in great detail concluding, "our review of the Missouri decisions compels us to acknowledge that Missouri has in fact recognized a special exception for the admission of evidence of prior and subsequent similar conduct in cases of sexual abuse of children." *Id.* at 768. What the court in *Lachterman* actually did was to synthesize Missouri decisions and restate the reasoning allowing for exceptions to the rule into a new exception. The court stated:

> We view such conduct as so unnatural and depraved that regardless of the relationship or similarity of status between the victim and other children subjected to like sexual abuse by the defendant, evidence that the defendant engaged in similar acts of sexual abuse of children of the same sex as the victim near in time to the acts charged tends to prove the defendant's guilt of the crime on trial. Evidence of repeated acts of sexual abuse of children demonstrates, per se, a propensity for sexual aberration and a depraved sexual instinct and should be recognized as an additional, distinct exception to the rule against the admission of evidence of uncharged crimes.
>
> *Id.* at 768.

Although urged by the State to adopt the sexual aberration exception established by *Lachterman*, it is not necessary to do so in deciding the instant case. The evidence admitted in *Lachterman* besides testimony of witnesses included "kiddie pornographic magazine", sex books, video tapes, photographs of children, childsized G.I. Joe tennis shoes, clippings of newspaper articles involving sexual incidents, a toy motorcycle and cash. Unlike the problems raised in the admission of this physical evidence with which the Eastern District had to deal, the facts of the instant case regarding the witnesses' statements fit squarely within the recognized exceptions of motive and common scheme or plan.

Both the victim, B.C., and his brother, J.C., were Barnard's step-sons. They lived in his home, under his care and control. Both boys were near the same age

and were subjected to Barnard's abuse. The sexual abuses, the threats and the punishments inflicted upon B.C. and, to a lesser degree, upon J.C., show a pattern of conduct both relevant and material to the crimes Barnard was charged with and being tried for against the victim, B.C.

As the court in *State v. Courter*, 793 S.W.2d at 388, points out, such evidence of prior sexual deviation, "is highly prejudicial to a person held to answer sexual charges." This is not only true in the instant case but in every case where evidence of this nature is presented. In balance, however, the prejudicial effect is outweighed by the probative nature of the evidence Barnard complains of and Barnard's Point I is denied.

Barnard next argues that the trial court erred by refusing to dismiss the case or remand it for a preliminary hearing where he went unrepresented by counsel at his arraignment and at his preliminary hearing.

The record reveals that Barnard appeared at his arraignment *pro se*. The court read the information to Barnard and he entered a plea of not guilty. Furthermore, the court found that Barnard was indigent and appointed counsel.

The sixth amendment right to counsel attaches in the "critical" stages of a criminal proceeding. *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The right to counsel is not limited to the trial itself, but exists at those "points of time at or after the initiation of adversary proceedings—whether by way of formal charges, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). "The question of whether arraignment signals the initiation of adversary judicial proceedings, moreover, is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel, absent a valid waiver." *Michigan v. Jackson*, 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

In Missouri, arraignment is not a critical stage in a criminal proceeding and thus, absent some prejudice to the accused, the absence of counsel at the arraignment does not violate due process. *Gilmore v. Armontrout*, 861 F.2d 1061, 1070 (8th Cir. 1988); *Parks v. State*, 518 S.W.2d 181, 184 (Mo.App.1974). Barnard makes no showing of prejudice. He relies upon *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), claiming he does not need to show prejudice because of the "total deprivation of counsel." Barnard's reliance upon *Cronic* is misplaced in two respects. First, the "total deprivation" referred to in *Cronic* is in reference to a critical stage of the proceeding. *United States v. Cronic*, 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25. In Missouri, arraignment is not a critical stage. *Gilmore v. Armontrout*, 861 F.2d at 1070. Secondly, assuming Barnard is referring to the whole of the legal proceedings against him, he was in no way totally deprived of counsel. Counsel was appointed to Barnard and he was represented during his trial.

Barnard can show no prejudice, for none existed. An amended information was filed by the State pursuant to Barnard's motion for a bill of particulars. The new information was read to Barnard with his counsel present. Barnard made the choice of pleading not guilty, the same plea he entered *pro se* at his first arraignment.

Barnard was also unrepresented at his preliminary hearing. He claims that this was a violation of his right to counsel. The preliminary hearing in a felony prosecution is indeed a critical stage of the criminal process where an accused's sixth amendment right to counsel attaches. *State ex rel. Vaughn v. Morgett*, 526 S.W.2d 434, 436 (Mo.App.1975). The trial court found that Barnard had voluntarily waived his right to counsel; in the hearing on Barnard's motion to remand the court notes that the waiver had been noted on the docket entry. *See Wolfe v. State*, 574 S.W.2d 453, 454 (Mo.App.1978). There is no transcript of the preliminary hearing for this court to review, most likely due to the fact that there is no requirement for the

making of a record of such hearing. There is also not a copy of the case history sheet, i.e. docket sheet. This case history would indicate when the movant requested appointment of counsel and the actions of the court in response to said request, prior to the judge making his entry finding Barnard waived his right to counsel. The only record before this court is the transcript of the argument of counsel on the motion to remand. In said argument, the prosecutor stated that the court found that defendant had waived his right to counsel when he appeared for the preliminary hearing without counsel, because the victim had appeared from the State of Ohio three times to testify at the preliminary hearing, Barnard had posted a substantial bond and was not in jail and was free to contact private counsel, and Barnard had said several times he would have counsel and then did not. "A transcript on appeal must contain all of the records and proceedings necessary to a determination of the questions presented for decision, and where any such items are absent there is nothing for the appellate court to decide." *State v. Hamilton*, 612 S.W.2d 141, 143–44 (Mo.App.1980). There is an insufficient record on appeal to review the ruling of the court that the actions of Barnard were a waiver of his right to counsel, but the record available supports the holding that a waiver occurred. *See generally, State v. Yardley*, 637 S.W.2d 293 (Mo.App.1982); *Wolfe v. State*, 574 S.W.2d 453 (Mo.App.1978). Point II is denied.

In Point III, Barnard contends that the trial court erred in overruling his motion to dismiss for lack of specificity in the allegations. Barnard alleges that he had a right to a unanimous jury and, due to the generalized nature of the charges and the multiplicity of the evidence presented, it is impossible to tell whether all twelve jurors agreed to any one incident of sodomy or abuse.

■ The language of the amended information charging Barnard with sodomy and child abuse tracks the language of the MACH–CRs for sodomy and for child abuse. MACH–CR 20.08 (sodomy);

MACH–CR 22.12 (child abuse). Compliance with the forms approved by the Supreme Court satisfies the requirement that the information or indictment be plain, concise and definite as to the essential facts constituting the offense charged. Rule 23.-01(b); Rule 23.01(e); *See State v. Burch*, 740 S.W.2d 293 (Mo.App.1987).

■ Barnard claims that the failure to allege a specific time frame denied him the opportunity to prepare an adequate defense. The primary purpose of an indictment or information is to give a defendant general notice of the charge against him. *State v. Higdon*, 774 S.W.2d 498, 500 (Mo.App.1989). Time is not of the essence in a case involving sodomy. *Id.* Indictments and information containing general allegations of time have been consistently approved in sodomy cases. *Id.* "Leeway is necessary in charging sexual abuse and sexual intercourse with minors because children who are the victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred." *State v. Hoban*, 738 S.W.2d 536, 541 (Mo.App.1987). The information in question was sufficient to provide Barnard with general notice of the charge against him.

■ Barnard also conjectures that the jurors may have been divided over which incident they convicted him upon, thus depriving him of a unanimous verdict. The jury was given specific instructions as to the incidents forming the basis for the charges against Barnard. They were instructed that if they believed beyond a reasonable doubt that Barnard placed his mouth on B.C.'s penis between the dates of September 1, 1986 and August 31, 1987, he was to be found guilty of sodomy. Likewise, the jury was instructed to find Barnard guilty if they believed, beyond a reasonable doubt, that Barnard inserted a toothbrush into B.C.'s anus between the dates of November 1, 1986 and November 30, 1986. The jury received proper and adequate instruction. It is presumed that the jury followed the instructions as they were given. *State v. Preston*, 673 S.W.2d

1, 7 (Mo. banc 1984). Barnard's Point III is denied.

■ In Point IV, Barnard argues that the trial court erred in refusing his proffered Instructions B and C and in giving Instruction No. 4 as Instruction No. 4's definition of proof beyond a reasonable doubt as proof which leaves the jury "firmly convinced of the defendant's guilt" diminished the state's burden of proof. Barnard's proffered instructions provided alternate definitions for what constitutes reasonable doubt. Barnard cites as authority the recent United States Supreme Court case of *Cage v. Louisiana,* — U.S. —, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), inviting this court to reexamine its decisions on this issue.

Instruction No. 4 was patterned after MAI–CR 3d 302.04. The "firmly convinced" definition of reasonable doubt has been approved by the Missouri Supreme Court. In *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), the court stated:

> The "firmly convinced" language contained in the MAI definition is not new. It is substantially the same as that found in the federal instructions, and has been employed in federal and state courts alike. It is intended to assist lay jurors in their understanding of the legal phrase "beyond a reasonable doubt." The instruction achieves that purpose; in our view, "firmly convinced" is essentially synonymous with "beyond a reasonable doubt." (footnotes omitted).

*Cage* does not change this conclusion, that "firmly convinced" is synonymous with "beyond a reasonable doubt." In *Cage,* the Supreme Court examined a Louisiana instruction used during the guilt phase of a first degree murder trial. *Cage v. Louisiana,* — U.S. at —, 111 S.Ct. at 329, 112 L.Ed.2d at 341. The Court set out the relevant part of the instruction as follows:

> "If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. **It must be such doubt as would give rise to a grave uncertainty,** raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. **It is an actual substantial doubt.** It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a **moral certainty."** *State v. Cage,* 554 So 2d 39, 41 (La 1989) (emphasis added).

*Cage v. Louisiana,* — U.S. at —, 111 S.Ct. at 329, 112 L.Ed.2d at 341–42. The Court construed the instruction in light of how reasonable jurors could have understood it as a whole. *Id.* — U.S. at —, 111 S.Ct. at 330, 111 L.Ed.2d at 342. The court held that, "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.* The court noted that similar attempts at defining reasonable doubt have been criticized by the Federal Courts of Appeal. *Id.* Nothing in *Cage* questions the validity of the "firmly convinced" language used in Missouri. It is categorically different than the language used in the Louisiana definitions and, as the Missouri Supreme Court points out, it is substantially the same language found in the federal instructions. *State v. Antwine,* 743 S.W.2d at 62. Barnard's Point IV is denied.

■ In his final point, Barnard seems to be asserting that the trial court erred by not declaring a mistrial when the verdict-directing instruction, Instruction No. 6, had to be rewritten after it had been read to the jury. The flawed instruction stated that the jury was to find Barnard guilty if they found that he had placed "his penis in

[B.C.'s] mouth." The correct wording should have been that "defendant placed his mouth on [B.C.'s] penis." The court instructed the State to rewrite the flawed Instruction No. 6 to reflect the correct wording. The defense requested a mistrial, but the court denied that request. The corrected instruction was read to the jury. Barnard claims that the new instruction only served to confuse and mislead the jury and that mistrial was the only remedy.

The declaration of a mistrial is a drastic remedy which should only be utilized in extraordinary circumstances where prejudice to a defendant cannot be removed in any other way. *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). The decision on whether or not to grant a mistrial lies within the discretion of the trial court as it is in a better position than is an appellate court to determine what prejudicial effect the incident that precipitated the request has on the jury. *Id.* at 401. Appellate review is conducted as to whether or not the trial court abused its discretion. *Id.*

There was no abuse of discretion in the instant case. The trial court took the proper measures, seeing that the instruction was corrected and reading that corrected instruction to the jury before its deliberations. Barnard's Point V is denied.

The judgment of conviction is affirmed. The appeal from the denial of the postconviction motion is dismissed.

All concur.