**STATE of Missouri, Respondent,**

v.

**Stanley Robert CHILES, Appellant.**

**No. WD 45519.**

Missouri Court of Appeals,
Western District.

Nov. 24, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 22, 1992.

Application to Transfer Denied
March 23, 1993.

James F. Crews, Crews, Gaw, Lutz & Opie, Tipton, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P.J. and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Stanley Robert Chiles appeals from his conviction for sexual abuse in the first degree, § 566.100, RSMo 1986,[1] for which he was sentenced to a four-year term of imprisonment. Chiles presents three points on appeal, claiming that the trial court erred in: (1) refusing his request for a mistrial when the state attempted to introduce, before the jury, a transcript of a prior conviction; (2) permitting a highway patrolman to testify about his investigation of an allegation of child molestation against Chiles because such testimony was prejudicial and regarded events remote in time; (3) failing to submit the issue of punishment to the jury because Chiles was not proven to be a prior offender. Reversed and remanded.

In February of 1991, eleven-year old B.H. lived with his father and stepmother next door to Stanley Chiles. B.H. was friends with Chiles' son and daughter. At the invitation of Chiles' daughter, B.H. ate dinner and spent the night at the Chiles' home on Sunday, February 3, 1991.

Before going to bed at the Chiles' home, B.H. took a shower. Chiles entered the bathroom while B.H. was showering and began helping B.H. scrub his hair. Chiles then left the bathroom. He later returned and fanned the bathroom door open and shut while B.H. was getting dressed.

B.H. went to bed about 11:00 p.m. He slept on the couch in the living room wearing underwear with "Jam" shorts over them and a shirt borrowed from Chiles' daughter. B.H. was awakened in the middle of the night by Chiles touching B.H.'s penis through his clothing. B.H. turned over on his stomach, got up quickly, told Chiles not to touch him anymore and went to the bathroom.

When B.H. returned from the bathroom, Chiles was in the living room. Chiles asked B.H. some questions about having sex with girls and about having an erection. Chiles also forced B.H. to place a vibrator on B.H.'s penis. Chiles then played a movie on the VCR and fell asleep in a chair. B.H. testified that during this time he wanted to go home but was afraid to do so because Chiles' feet were on his belongings. B.H. returned to his own home about 6:30 a.m. after being awakened by Chiles' daughter. B.H. woke his father and told him what had happened at the Chiles' home.

At trial, Sergeant Roy Herren of the Missouri Highway Patrol testified that he had investigated a report of sexual abuse involving Chiles in May of 1984. Herren testified as to what Chiles told him after Chiles received and waived his *Miranda* rights. Herren testified that on May 17, 1984, when Chiles was working at a video arcade in Lake Ozark, Missouri, he invited two young boys, a nine-year old and a twelve-year old, to spend the night at his home where he fondled the nine-year old's genitals while in the shower and then had oral and anal sex with the nine-year old. The prosecution offered Exhibit 3, a copy of a judgment and sentence in Morgan County, Missouri, for admission into evidence. Chiles objected and asked for a mistrial which was denied. The court found Chiles to be a prior offender and, after the jury found him guilty of sexual abuse in the first degree, the court sentenced Chiles to a four-year term of imprisonment.

The dispositive issue on this appeal is raised by Chiles in his second point. In this point, Chiles argues that the trial court erred in permitting a highway patrol officer to testify, over objection, regarding his investigation of a prior child molestation allegation against Chiles, because such testimony was too remote in time to be relevant and was unduly inflammatory. Chiles also argues that the evidence had no legiti-

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

mate tendency to prove guilt of the crime charged, had a prejudicial effect which outweighed its probative value, and was unrelated to the crime charged.

 "A criminal defendant has a right to be tried only for the crime or crimes with which he is charged." *State v. Shaw,* 636 S.W.2d 667, 671 (Mo. banc 1982). Evidence of offenses unrelated to the offense charged is inadmissible unless it has a legitimate tendency to prove the defendant's guilt of the crime charged. *Id.* at 671–72. In order for the defendant's separate and distinct crimes [2] to have a legitimate tendency to prove the crime charged, the evidence must establish one of the following: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan involving the commission of two or more crimes so related that proof of one tends to establish the other; or 5) the identity of the person charged with the crime. *Id.* at 672. *See also State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992). Such evidence is not admissible on the theory that prior crimes show the defendant's propensity to commit that particular type of crime. *State v. Courter,* 793 S.W.2d 386, 389 (Mo.App. 1990). Even when prior crime evidence is admissible under one of the exceptions, it can only be admitted if the probative value of the evidence outweighs its prejudicial effect. *State v. Barnard,* 820 S.W.2d 674, 678 (Mo.App.1991). The trial court has a great deal of discretion in determining whether the probative value outweighs its prejudicial effect. *Shaw,* 636 S.W.2d at 672.

 In applying the five exceptions to the facts of the case at hand, the common scheme or plan exception is the only exception which is potentially applicable. There is no question of Chiles' motive or intent and no suggestion that mistake or accident was involved. Nor is the identity exception applicable in Chiles' case because Chiles' identity is not at issue. The common scheme or plan exception has traditionally been utilized when a series of crimes are so linked together in time and circumstances

that proving one proves the others or when a series of offenses are committed, each for the purpose of facilitating another. *Courter,* 793 S.W.2d at 389. The common scheme or plan exception is not applicable to Chiles' case in this traditional form as the prior crime occurred nearly seven years previously.

This court recognized in *Courter,* 793 S.W.2d at 389, that the common scheme or plan exception also permits admission of evidence of crimes which are committed in such a similar and distinctive manner that they are "modus operandi" type crimes. Judge Thomas, of the Missouri Supreme Court, suggests that it might be better to recognize a separate exception for "signature modus operandi/corroboration" evidence rather than include it within the generic title of common scheme or plan. *Sladek,* 835 S.W.2d at 317 (Thomas, J. concurring). Evidence of the prior crime is probative because it corroborates the victim's complaint in the crime charged. *Id.* The modus operandi must be sufficiently unique and sufficiently associated with the defendant that it is in the nature of a signature. *Id.* at 316. Judge Thomas cautions against using signature modus operandi/corroboration evidence too casually, because:

> [a]lthough we have called this exception corroboration, it really involves reasoning from the signature modus operandi based upon the propensity of the defendant to commit this type of crime to the conclusion that the defendant committed the crime charged. This reasoning goes squarely against the rationale for the general rule. This makes it particularly important that the requirement for a signature modus operandi be strictly enforced.

*Id.* at 317. He states that the modus operandi of the crime must be unusual and detailed with distinguishing characteristics that make it unique to a certain person. *Id.* A series of similar prior crimes, rather than a single prior crime, makes the case for admissibility much stronger. *Id.*

---

**2.** The use of the word "crime" does not require that a conviction or a charge for the defendant's prior wrongdoing exist. The law covers any wrongdoing, charged or uncharged, which

could have been the subject of a criminal charge. *State v. Sladek,* 835 S.W.2d 308, 313 n. 1 (Mo. banc 1992) (Thomas, J., concurring).

Admittedly, there are similarities between the charges Chiles faced in the instant case and the acts leading to Chiles' prior conviction. Both crimes involved sexual abuse of boys between nine and twelve years of age whom Chiles had invited to spend the night at his home. Both situations also involved incidents when the boys were taking showers, however, only the first crime involved a sexual encounter in the shower. Chiles did not touch B.H. in a sexual manner in the shower as he had touched the nine-year old boy in his prior conviction. Although video games are mentioned in both incidents, the factual importance of the video games does not rise to the level of being part of a scheme or plan. In addition, there was little similarity in the sexual acts that comprised the two offenses. Chiles' prior conviction involved fondling of the nine-year old's penis as well as oral and anal sex, acts different from the touching that took place in the case at hand.

It is doubtful that the two crimes have enough similarities to label them "signature" crimes given the holdings in *Sladek* and *State v. Atkinson*, 293 S.W.2d 941 (Mo.1956). In *Sladek*, the court found error in admitting the testimony of three female dental patients regarding incidents in which the dentist had touched their breasts because this evidence did not tend to prove the crime for which the dentist was charged, namely that the dentist had administered nitrous oxide to a patient and thereafter raped her. *Sladek*, 835 S.W.2d at 317–18 (Thomas, J. concurring). The crimes in *Sladek*, although all sexual crimes that occurred in a dental office involving female patients, were not sufficiently similar to constitute signature crimes. *Id.* at 318.

*Atkinson* involved allegations that an employer had forced a 15–year old boy to perform oral sex upon him. The trial court admitted the testimony of other young boys, who had worked for the defendant, describing similar acts the defendant had forced them to commit. *Atkinson*, 293 S.W.2d at 942. The Missouri Supreme Court reversed finding that although the defendant followed the same general pattern with the boys, the crimes were not so interrelated that proof of one would establish the others. *Id.* at 943.

■ Both *Sladek* and *Atkinson* suggest that crimes of a sexual nature with victims of similar age and sex may not be sufficiently unique to rise to the level of signature crimes. In the case at bar, it is not necessary to determine whether the evidence of Chiles' prior crime constitutes a signature crime for the purpose of corroboration and is admissible under the common scheme or plan exception, because the prior conviction occurred approximately seven years before the crime being tried and is too remote to be admissible. *Courter*, 793 S.W.2d at 390. The period of time separating the prior offense from the offense being charged is an additional factor which should be considered when determining the admissibility of prior crimes evidence. *Id.* The Missouri Supreme Court held in *State v. Cutler*, 499 S.W.2d 387, 388 (Mo.1973), that passage of time between the prior crime and the crime under prosecution destroys the connection of the offenses under a common scheme or plan. The court in *Cutler* found that the testimony of the victim's older sister describing the sexual abuse the older sister had been subjected to by the defendant was not admissible under the common scheme or plan exception because the prior offense occurred seven to eight years before the offense being tried and was too remote. *Id.*

In addition, this court cited *Cutler* when it held in both *Lewis v. State*, 806 S.W.2d 89 (Mo.App.1991), and *Courter* that evidence of prior sexual offenses under the common scheme or plan exception was not admissible if the offense was too remote in time. In *Lewis*, 806 S.W.2d at 93, the court excluded the testimony of the victim's sister describing her own sexual abuse by the defendant which occurred approximately ten years before the offense being tried. In *Courter*, 793 S.W.2d at 390, the court excluded testimony of the victim's brother describing sexual offenses committed by the defendant twenty-three or twenty-four years before the abuse which was the subject of the current charges.

*Cutler* precludes use of the common scheme or plan exception to admit evidence of Chiles' prior conviction for the purpose

of corroboration because the conviction took place almost seven years before the offense charged. In addition, Judge Thomas recognizes, in describing the use of prior crimes evidence for corroboration purposes in his *Sladek* concurrence, that prior crimes closer in time to the crime charged have a stronger relevancy. *Sladek,* 835 S.W.2d at 317 (Thomas, J. concurring).

As the testimony of Sergeant Herren concerns an event too remote to fit within the common scheme or plan exception, or the signature modus operandi/corroboration exception if it is so designated, and the evidence does not fit within any other exception to the general rule, Chiles' conviction must be reversed and the cause remanded for a new trial. As a result, it is unnecessary to consider the issues raised in Points I and III as such matters are unlikely to occur on retrial.

The judgment is reversed and the case is remanded for a new trial.

All concur.