**STATE of Missouri, Respondent,**

v.

**Earl BURSLEY, Appellant.**

**No. KCD 28183.**

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 2, 1976.

Application to Transfer Denied Oct.
12, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

On a jury-waived trial, Earl Bursley was found guilty on two counts of sodomy. He was sentenced to consecutive terms of 20 and 15 years. This appeal followed.

The state's evidence was designed to show that events out of which the charges arose occurred August 3, 1973, at the Green Crest Motel in Jackson County, Missouri.

Appellant Bursley was an itinerant trucker. He had employed two boys to assist him. One, Gary C——, then around 15 years of age, had been employed as a result of a chance meeting between Bursley and Gary's mother in a Jackson County restaurant. According to Gary, Bursley told his mother that he was looking for some help. His mother suggested Gary and within an hour Gary was away on a trip with Bursley to St. Louis to get a load of used batteries. According to Gary, Bursley agreed to pay $5.00 per hour for his services.

The second boy, Robert M————, was employed as the result of arrangements a cousin made with Bursley. Robert was then around 13 or 14 years of age. According to Robert, Bursley agreed also to pay $5.00 per hour for his services.

(Some insight into the educational background of the boys is provided by Gary's answer at trial to the question: "When does school start in the fall?" "I don't know when it starts. I ain't for sure when it started last year * * * because I don't go to school that often." and by Robert's statement that he quit school "last year." "Dad took me out because I wasn't—I couldn't learn nothing. I get all confused." Robert also apparently had a speech impediment.)

Gary and Robert apparently made two trips between Kansas City and St. Louis, on one picking up used batteries in St. Louis and returning them to Kansas City. Gary accompanied Bursley on a trip to Oklahoma City. On their return from that trip they picked up Robert at his home in Peculiar, Missouri.

Between trips, Gary had been living with Bursley in a tent at Bursley's parents' residence. Upon the return from the Oklahoma City trip, Bursley and his parents got into a fight. Bursley and the boys left, and, along with Chuck Spiker, an associate of Bursley, they checked into Room 10 of the Green Crest Motel. According to Gary, they did so at around 4:00 P.M., August 3, 1973.

According to Gary, after they checked into the motel, Bursley suggested "more or

less fun and games." Gary disagreed. "Well, I tried to make a run for the door, and when I did, he grabbed me and he hit me with his fist and he beat me with a blackjack. And then he threw me on the bed and I just laid there. And then he masturbated me." Asked whether or not Bursley committed an act of oral sodomy on him, Gary replied: "I don't know. I was unconscious. When he hit me with his fists and then he hit me with the blackjack, I was unconscious, he threw me on the bed." Gary stated that Bursley also beat Robert with the blackjack and his fists; threw him on the bed with Gary and made Robert perform an act of oral sodomy on Bursley.

Gary was then asked whether or not Bursley had oral sodomy with him. Gary replied: "This was later. He had sent Robert Marshall and Chuck Spiker out of the room. And then it occurred. * * * [Bursley] threatened to kill me if I wouldn't let him. * * * I took off to run for the door, and he grabbed me and then he hit me up against the wall with his fists and then he grabbed the blackjack and that's when he beat me with the blackjack."

In response to questions by the court at the trial, Gary stated that, after they checked in at the motel, he, Robert and Chuck left the room and went swimming. When they returned to the room, they changed clothes. Bursley told Robert and Chuck to leave and then Bursley made the assault on Gary. The assault lasted 45 minutes to an hour. Robert and Chuck returned and Gary left the room. "That's when it took place with Robert." Gary didn't see the assault on Robert.

Following an overnight adjournment, Gary resumed the stand and then stated that he had witnessed the attack on Robert and that Bursley made Robert commit oral sodomy on him and Bursley then committed anal sodomy on Robert. Asked why he had changed his story, Gary said: "Well, yesterday, I was pretty nervous, and mixed up, and I'm pretty—I'm—I didn't want to plain, blunt out say it. I was kind of shy. I was embarrassed." He said also that he

had talked to Robert that morning. "And he told me, when I come in here, he just said, 'It ain't going to do no good being shy and holding back.' He said, 'You got something to say, you say it.' And that's the only reason why you've changed your story, then, today? No, because I—I don't want to see this happen again, him get out on the street." Gary also stated in response to the court's questioning that he was not unconscious following the beating: "I was nervous yesterday and I was speaking before I was thinking, but I was not unconscious." He said that Spiker was not in the room during the assault but that he, Robert and Bursley were and that he saw Bursley beat Robert with the blackjack. He wasn't sure whether Robert was in the room when Bursley beat Gary. Later Gary said Robert was not in the room when Bursley beat him.

According to Robert, when they got in the motel room, Bursley asked him to perform an act of sodomy and he refused. Bursley started hitting him and Gary with a blackjack. Bursley made a sexual assault on Gary. "[T]hen he made me get over there [on the bed], if I didn't, he would hit me again, so I had to get over there and do what he said, because I didn't want to get hit any more by him." Bursley made Robert perform an act of oral sodomy on him and then he made an anal assault on Robert.

The sequence of subsequent events is somewhat difficult to reconstruct. However, after August 3, Gary made a trip to Denver with Bursley. Following that trip he returned home and for the first time told his mother of the August 3 events. Bursley was arrested on August 31 on the charges for which he was tried. At the time of Bursley's arrest, a blackjack was found under the seat of his truck. Gary and Robert identified it as the blackjack used in the beatings.

Robert apparently made one further trip with Bursley. He went home following that, about two weeks after August 3, and told his father of the affair, but his father refused to believe him. Robert told his mother and she told him to stay home.

Bursley was charged in one count with sodomy upon Gary and in the other with sodomy upon Robert. At the trial held June 30, 1975, Gary and Robert testified for the state. The only other evidence offered by the state showed that Bursley failed to appear for trial when the case was first set and had to be returned from Wyoming for trial.

As part of the state's case, there was introduced in evidence the key to Room 10 of the Green Crest Motel, Bursley's blackjack and the bill for the rental of the motel room.

The defendant offered no evidence. A motion for acquittal at the close of all the evidence was overruled. In ruling upon the motion the trial court stated:

"Mr. Katz, I would certainly agree with you about the fact that there appear to be many discrepancies in the testimony, particularly of [Gary]. I can't think of a time that I've heard a more bizarre tale of employment unfolded in the courtroom with regard to how these two boys were employed and the length of time that they worked and how they were treated during that period of time. It's not a proper subject of this trial, but the cavalier attitude of the parents about what happened to these two boys, and the activities of their sons, is almost unbelievable. But inasmuch as the Court must pass on the credibility of the witnesses, as well as make its own individual findings, I can't help but believe that, in my opinion, from observing [Robert] this morning, and his obvious impairments, I don't think it would be possible for anybody to manipulate him to contrive a story that would stand up under cross-examination. I just don't think he has the capacity to do it."

On this appeal the sufficiency of the evidence is the sole point raised by appellant. Appellant relies upon the requirement in rape and sodomy prosecutions that corroborating evidence must be adduced when the complaining witness's testimony is contradictory or unconvincing. 81 C.J.S. Sodomy § 5C(2), p. 378 (1953). See *State v. Wilson*, 361 Mo. 78, 233 S.W.2d 686, 688[4–6] (1950).

The trial court was fully aware of the problem to which the testimony of Gary and Robert gave rise. His statement recognized "discrepancies" in their testimony. Further evidence of the trial court's concern is to be found in the extent of the court's interrogation of the witnesses. In the transcript, 24 pages are devoted to the original examination, cross-examination, redirect examination and recross-examination of Gary. That is followed by 40 pages of interrogation of the witness by the court and the witness's answers.

The defense produced depositions of the boys, taken in November, 1973. Discrepancies between Gary's testimony at that time and his trial testimony as to the number and extent of the blackjack beatings were pointed out. There were also discrepancies about the length of time that Gary was home following the August 3 event before he left with Bursley on the trip to Denver. At the trial, he said about an hour, with Bursley always present. On his deposition he said he was home for two days. In Robert's deposition, he denied that Bursley performed the act of oral sodomy upon him, stating that Bursley wanted to but he (Robert) wouldn't let him. In his deposition, Robert also had denied that Bursley struck him at the motel on August 3. When asked to explain the discrepancies, Robert stated: "I do not have no answer."

Examination of the boys at the trial also brought out what appellant now states was a possible motive for their fabricating the charges—they were dissatisfied because Bursley had failed to pay them what he had agreed. On cross-examination of Gary, he was asked:

"Q Okay. Did he pay you at the end of every trip?

"A He never did pay me. I think out of—he might have give me five dollars at one time.

"Q And how much at another time?

"A That would—a dollar, or 50 cents, you know, to get a coke or something like that.

"Q So he did pay you at different intervals throughout your employment, is that what you're telling the Court?

"A Yes. But—you know, it wasn't enough to—for the work that I was doing. Like I didn't get enough money to go buy a steak dinner.

"Q Did that upset you, that he didn't pay you?

"A Yes, it did, because I was looking forward to getting a car.

"Q I see. It's still upsetting you then, now?

"A (Witness nods head affirmatively.)

"Q Pardon me?

"A Yes, it is."

Robert testified:

"Q Okay. Did you ever receive any payment from Mr. Bursley?

"A Once in that time, but that's about all.

"Q One time?

"A Yes.

"Q How much did you receive at that time?

"A Sometimes he gave me $25.00 or something like that, and that's about all.

"Q Did he give you money from time to time to get something to drink and something to eat?

"A Yes. Sometimes.

"Q How many times?

"A About five or six times."

Subsequently he said that Bursley paid him $25.00 "four or five times."

Although the rule which appellant would apply in this case has been criticized as an "exception to the general rules governing appellate review" (*State v. Platt*, 496 S.W.2d 878, 880 (Mo.App.1973)) and although application of the rule has produced relatively infrequent instances in which it provides the basis for overturning a conviction for a sexually related offense (see, for example, *State v. Tevis*, 234 Mo. 276, 136 S.W. 339 (1911); *State v. Donnington*, 246 Mo. 343, 151 S.W. 975 (1912); *State v. Guye*, 299 Mo. 348, 252 S.W. 955 (1923); *State v. Burton*, 355 Mo. 467, 196 S.W.2d 621 (1946)), there has been no rejection of the rule by the Supreme Court of this state (see, for example, *State v. Neal*, 484 S.W.2d 270, 272[5] (Mo.1972); *State v. Gray*, 423 S.W.2d 776, 781[5] (Mo.1968)).

That there were contradictions in the testimony of the two prosecuting witnesses is clear. Gary first testified one way and then another as to whether or not the beating rendered him unconscious, whether or not he was present when Robert was assaulted and whether or not Robert was present when he was assaulted. Gary attempted to explain away his inconsistent testimony, but Robert made no explanation for his deposition answers in which he had stated that he successfully resisted appellant's attempts to assault him.

As above noted, the trial court obviously recognized the problems involved in Gary's first version, i. e., that he was rendered unconscious by the beating and did not know what happened thereafter. Questioning by the trial court produced further inconsistencies which the prosecutor then felt called upon to explain. Gary's explanation of his different testimony in response to the prosecutor's questioning following the court's examination that Robert told him not to be shy or hold back also must be viewed in the light of Robert's denial of such a conversation.

In the light of the discrepancies and inconsistencies in the witnesses' testimony, the rule requiring corroboration must be applied. See *State v. Guye*, supra; *Coltrane v. United States*, 135 U.S.App.D.C. 295, 418 F.2d 1131 (1969). Corroboration is wholly lacking. Although the sufficiency of the evidence was not an issue in the recent cases of *State v. Dayton*, 535 S.W.2d 469 (Mo.App.1976), and *State v. Dayton*, 535 S.W.2d 479 (Mo.App.1976), the nature and extent of corroboration of the prosecuting witnesses in those cases are in marked contrast with the present case. The fact that physical evidence tended to show that the parties were at the Green Crest Motel would show at best only opportunity to

commit the offenses and does not corroborate that the crimes did occur. The testimony of each of the boys as to the whereabouts of the other during the alleged assaults is so contradictory as to preclude corroboration of one by the other, if such means of corroboration is available. See 30 Am.Jur.2d Evidence, § 1156, p. 332 (1967).

Appellant's flight does not produce the necessary corroboration in this case in view of the glaring contradictions and inconsistencies in the state's evidence.

"The judgment is, therefore, reversed and the cause remanded for a new trial, and unless stronger evidence is adduced the court should direct an acquittal of * * * [the defendant]." *State v. Burton*, supra, 196 S.W.2d 623[2].

Reversed and remanded.

All concur.