**STATE of Missouri,
Plaintiff–Respondent,**

**v.**

**Quantrell CODY, Defendant–Appellant.**

**Quantrell CODY, Movant–Appellant,**

**v.**

**STATE of Missouri,
Respondent–Respondent.**

**No. 56011.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 30, 1990.

John A. Klosterman, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Christine A. Alsop, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Appellant, Quantrell Cody, was charged by indictment with three counts of forcible rape, two counts of forcible sodomy, two counts of armed criminal action and one count of felonious restraint. Subsequently, the state filed a substitute information in lieu of indictment, charging that appellant qualified as a prior, persistent, class X and persistent sexual offender pursuant to Sections 557.036.4, 558.016, 558.018 and 558.-019, RSMo 1986. Appellant's motion to sever the offenses was sustained.[1] In the underlying action he was tried on, and found guilty of, one count of forcible rape (Count VII), one count of felonious restraint (Count VIII), one count of armed criminal action (Count IX) and one count of first degree robbery (Count X). Affirmed.

The evidence, viewed in the light most favorable to the verdict, was as follows:

At approximately 8:30 or 9:00 p.m. on March 10, 1987, the victim, M.M., left her mother's house and walked to a Chinese restaurant located on Taylor Avenue. Upon arriving at the restaurant, she decided not to purchase any food and turned back toward her mother's home. She walked across a vacant lot on the corner of Taylor and proceeded toward Aldine Avenue. As she walked down the block she noticed appellant come across the vacant lot she had just crossed.

Appellant asked M.M. if he could walk with her, but she told him she preferred to walk alone. He continued to walk behind her for a short distance, then he grabbed her and put a knife to her throat. Appellant asked M.M. how much money she had and she responded that she only had $1.30. They crossed the street and appellant demanded that she give him her money, which she did. At this point, M.M. was able to glance up at appellant's face.

Appellant and M.M. walked down Cote Brilliant to Taylor and then Garfield, to an alley located on Garfield. Appellant pulled M.M. into the alley, stopped at the first vacant house and told her to empty all her pockets. He threatened to do "something" to her if M.M. was lying about the amount of money she had.

They both moved to the end of the alley and went inside a different vacant house. They proceeded to a back room on the second floor where appellant directed M.M. to hang up his coat. M.M. was able to see appellant's face because of a street light outside the window.

Appellant instructed M.M. to remove her pants but she refused. He held the knife up and asked her if she wanted to see her family again. She went ahead and followed his orders because she feared for her life. He then directed her to place her coat on the floor and to lay down on it. He got on top of her and proceeded to rape her.

---

1. Appellant was previously convicted on Counts I through VI and was sentenced to a total of 120 years.

The act took five to ten minutes to accomplish. During this period, M.M. was able to get another look at appellant's face. She also got one more look at him as he was leaving.

M.M. went home but did not tell anyone about the attack until the next day when she told her boyfriend and her brother. She and her boyfriend drove around the area and found the vacant house. Her brother called the police. M.M. and the police went back to the vacant house where they found "clinic cards" for M.M.'s baby and mother on the second floor.

Several days later, M.M. saw appellant in front of her mother's house. He pulled up in a car and shook his hand at her. She also saw him on another occasion in front of a fast food restaurant. M.M. was waiting for a bus and saw appellant across the street. She turned around and appellant walked past her saying "you want to see your family" or words to that effect. The police were informed about both these incidents.

M.M. participated in the preparation of a composite drawing of her assailant. She testified that the final drawing did not look exactly like the individual, but it was similar. She stated that the hair was different because the police were unable to find a drawing which fit M.M.'s description.[2] She also testified that the facial features in the composite were similar to her assailant's features.

The police arrested appellant based on the composite. M.M. viewed a line-up and asked to have the suspects say "would [you] like to see [your] family again." She identified appellant based on his voice and appearance, although she testified that his facial characteristics (a moustache) and hair style had changed since the attack. She also made an in-court identification of appellant.

At the close of all the evidence the jury found appellant guilty on all four counts. Appellant was found to be a prior, persistent and class X offender and was sentenced as follows: thirty years on Count VII, rape; ten years on Count VIII, felonious restraint; ten years on Count IX, armed criminal action; and, ten years on Count X, first degree robbery. All sentences are consecutive to each other as well as to the sentences received in Counts I through VI.[3]

On April 17, 1989, appellant filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. An amended motion was filed July 17, 1989 after counsel was appointed, and an evidentiary hearing was held on August 18, 1989. Thereafter, the motion court denied appellant's Rule 29.15 motion. This appeal followed.

In his first point appellant argues that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence and his motion for new trial because the state failed to prove beyond a reasonable doubt that appellant was the assailant, in other words there was insufficient evidence to support the verdict. He bases his argument on the fact that M.M.'s identification of her assailant was inconsistent.

In reviewing the sufficiency of the evidence to support the verdict, we consider all substantial evidence, and the inferences readily drawn therefrom, in the light most favorable to the verdict and reject all evidence and inferences to the contrary. *State v. Kuzma*, 751 S.W.2d 54, 57 (Mo. App.1987). It is not our function to substitute our judgment for that of the jury; we only determine if the evidence is sufficient to make a submissible case. *State v. Mayes*, 654 S.W.2d 926, 928 (Mo.App.1983).

The description M.M. gave to the police of her assailant was a black man, 5'2" to 5'6" tall, weighing approximately 230 pounds, no facial hair and with a chemically

2. She described her assailant's hair as an "old curl" which meant that his hair was longer and stringy, not curly or like an "afro."

3. The trial judge expressly determined during the trial that appellant was a prior, persistent, class X and persistent sexual offender; however, he omitted the persistent sexual offender status when appellant was sentenced. We find no reason to remand, however, because the sentence as entered, conforms whether appellant is classified as a persistent sexual offender or simply a prior and persistent offender.

treated hairstyle. Appellant, in fact, was 5'10" tall, weighed approximately 160 pounds, had a moustache and a natural type hairstyle. Appellant argues that because the state failed to corroborate M.M.'s testimony, the identification was insufficient to support the verdict.

A defendant is not entitled to a judgment of acquittal because of discrepancies or conflicts in the testimony of the state's witnesses. *State v. Newberry*, 605 S.W.2d 117, 121 (Mo.1980). The testimony of a single witness may be considered sufficient, even if that testimony is inconsistent. *State v. Rodney*, 760 S.W.2d 500, 503 (Mo. App.1988). Any inconsistencies are for the jury to resolve. *Id.* Corroboration of the complaining witness in a rape case is not mandated unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience that the validity of such testimony is rendered doubtful. *State v. Vidauri*, 699 S.W.2d 46, 48 (Mo. App.1985).

Reliability, not suggestiveness, is the linchpin in determining the admissibility of identification testimony. *State v. Clark*, 756 S.W.2d 565, 574 (Mo.App.1988). Factors we consider in determining reliability include the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the degree of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation. *State v. Reasonover*, 700 S.W.2d 178, 182 (Mo.App. 1985).

Apart from M.M.'s original description, her identification of appellant was strong. She had ample opportunity to see appellant during the incident. She made a composite drawing which resembled appellant enough that the police were able to make an arrest based on it. She also identified him from a line-up based on his physical appearance and voice.

Any inconsistencies between the initial description and the later identifications pertain to credibility and were proper matters for cross-examination. *Clark*, 756 S.W.2d at 574. We find that corroboration was unnecessary and that there was sufficient evidence to support the verdict. Point I is denied.

In his second point, appellant claims that the motion court erred when it denied his Rule 29.15 motion, after an evidentiary hearing, which alleged that his trial counsel was ineffective for failing to contact Patricia Jackson as an alibi witness.

Review of denial of post-conviction relief pursuant to Rule 29.15 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). The findings and conclusions of the motion court are clearly erroneous only if a review of the entire record leaves the appellate court with the definite and firm impression that a mistake was made. *Curtis v. State*, 759 S.W.2d 860, 861–862 (Mo.App.1988). Appellant's burden is a heavy one. In order to prevail on a claim of ineffective assistance of counsel appellant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that he was thereby prejudiced. *State v. Minton*, 782 S.W.2d 134, 137 (Mo. App.1989).

Appellant told his attorney that his girlfriend, Patricia Jackson, could provide him with an alibi. Counsel directed his investigator to contact the witness by giving him information on her whereabouts provided by appellant. The investigator discovered, however, that the address appellant gave him did not exist. He was also unable to reach Ms. Jackson with the telephone number appellant provided. Appellant thought of three more locations where the witness might be found. The investigator visited all three but was still unable to locate her. The investigator finally located Ms. Jackson's address through a school she had attended. This address was different from the one appellant provided.

The investigator delivered a subpoena to the address, but discovered when he got there that Patricia Jackson was out of town and that it was unclear when she would return. The investigator attempted to make contact up until the day of trial but was unsuccessful.

Ms. Jackson testified at the Rule 29.15 hearing that on the night of the crime between 9:30 and 10:30 p.m., appellant was with her. She also testified that in October 1988, when appellant was on trial, she took a trip and was gone for one and one-half days.

Counsel is required to make a "reasonable investigation." *See, Thomas v. State,* 736 S.W.2d 518, 519 (Mo.App.1987). The record indicates that counsel conducted a thorough search for the witness based on appellant's information. When, through the investigator's diligence, her address was discovered, she had previously left town. Appellant has failed to show that his counsel's performance fell below any standard of reasonableness. Point II is denied.

The judgment is affirmed.

REINHARD, P.J., and CRANE, J., concur.