**STATE of Missouri, Respondent,**

v.

**Ralph LOAZIA, Appellant.**

**Ralph LOAZIA, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58240, 59835.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 17, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 20, 1992.

Application to Transfer Denied
June 2, 1992.

William M. Barvick, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

In this jury-tried case, defendant, Ralph Loazia, appeals from a conviction of sodomy in violation of § 566.060 RSMo 1986. Defendant also appeals from the denial of his motion for post-conviction relief. Defendant was sentenced to ten years' imprisonment in accordance with the jury's assessment. We affirm.

The evidence adduced at trial established the following facts. On a Saturday in May, 1989, A.B.[1] stayed overnight at the home of a friend, the victim in this case. At that time, A.B. and the victim were ages eleven and nine, respectively. The victim's mother had moved to the residence with her children approximately two years earlier, leaving the residence she and the children had shared with defendant for four years. With the consent of the victim's mother, defendant had maintained a relationship

---

1. The initials used are not the true initials of the victim's friend.

with the children. It was not uncommon for defendant to visit or stay at the victim's home, and defendant went to the home on the night in question in order to be with the victim and her friend, A.B. The victim's mother left for work shortly before 10:00 p.m., and defendant remained in the house with A.B., the victim, and the victim's ten year-old brother.

After the victim's mother left, defendant suggested that he, A.B., and the victim play a game of "spin the bottle" in the victim's bedroom. Defendant made the rules: the bottle was spun, and the person to whom the open end pointed was to remove a piece of clothing. A.B. and the victim testified they removed some of their clothing; defendant removed all of his. A.B. further testified that defendant kissed the victim between her legs and touched both girls with his hands. At trial, the victim testified she does not remember whether defendant touched her during the game.

After the game ended, defendant left the room; and the girls stayed in the victim's bedroom. A.B. testified defendant told the girls he wanted to show them something; they met defendant in the bathroom. While the girls were watching, defendant masturbated and ejaculated into the sink. The girls testified defendant told them not to tell anyone what they had seen. Further, A.B. testified defendant told the girls that "This is how you get women pregnant," and that he would get in trouble if they told anyone. The victim and A.B. testified that defendant then returned to the victim's bedroom and gave them ice cream. They ate the ice cream and went to bed; defendant left the room.

A.B. testified defendant later returned to the room after the lights were out; she pretended to be asleep, but was wide awake. According to A.B., defendant awoke the victim, told her to take off her underwear, and kissed her genitals for two to three minutes. A.B. first testified defendant took off the victim's underwear, but upon cross-examination stated the victim removed her own clothing and did not resist. Upon further cross-examination, A.B. testified she had her eyes closed during part of the act and was looking up at the ceiling; she also stated that although defendant didn't threaten the victim, he told her not to tell anyone about the incident. Lastly, A.B. testified the door to the hallway was open and she could see defendant; she did not see a face, but the shape of the person entering the room was the same as that of defendant, and defendant was the only adult in the house at the time.

The victim testified she did not know if defendant returned to her room after he brought the girls ice cream, and that she did not remember defendant asking her to remove her clothes or doing anything to her while she was in bed. Over defense counsel's objection, the state elicited from the victim an account of prior sexual acts with defendant: defendant had touched the victim between the legs, and had removed her clothing and kissed her between the legs on more than three occasions.

During the summer of 1989, A.B. told a friend about the incident involving defendant. A.B. explained she had not told anyone previously because defendant had told the girls not to tell, and because they were scared. After telling her friend, A.B. told her parents.

In September, 1989, two deputy sheriffs visited defendant at his home. Defendant invited the sheriffs inside, and Officer Carl Fowler informed defendant he was under arrest and read the arrest warrant to him. Fowler read defendant his *Miranda*[2] rights and repeated some of them upon defendant's request; defendant indicated he understood the rights. The warrant identified the victim by her initials, and Fowler testified defendant asked whose name the initials represented. According to Fowler, defendant nodded his head when Fowler stated he thought defendant knew the victim's identity.

One to two weeks before the police interview, defendant had undergone surgery to replace an aortic valve. Fowler testified that defendant at the interview moved

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

slowly and had a large scar on his chest, but there was nothing unusual about his speech, he was not perspiring excessively, and he did not appear to be under stress. Defendant never asked Fowler to discontinue the questioning, and never asked that he be allowed to take medication or call a doctor or nurse. After the questioning, defendant said he was tired; the interview was terminated. Fowler did not at that time take defendant into custody, because he was concerned about defendant's physical condition and because he had no way of providing defendant with any medical assistance he might need.

Over defense counsel's objection based upon the trial court's overruling of defendant's pretrial motion to suppress, Fowler testified concerning certain responses defendant made during the questioning. Defendant nodded [3] his head yes when confronted about touching and kissing the victim's genitals. Further, Fowler testified that after being confronted about kissing the victim between the legs, defendant stated he thought his heart condition was "God's way of punishing him for what he had done." Lastly, Fowler testified defendant stated he had known for a long time that he needed counseling, and that because he loved the victim and felt like a father figure to her, "what he had done made it seem that much worse."

Defendant testified on his own behalf. He admitted initiating the "spin the bottle game" in the victim's bedroom and stated that by the game's end, he and the girls had removed all their clothing. However, defendant denied touching either child during the game. Further, defendant admitted masturbating in front of the girls, but denied asking them to watch him. He contended they pushed open the bathroom door and found him masturbating. Defendant testified he said nothing to the girls other than telling them to leave the bathroom. Further, defendant denied bringing the girls ice cream and returning to the victim's bedroom that night. Defendant testified the victim was "mistaken" and told a "mistruth" when she said defendant

had on earlier occasions touched her between the legs and on her "private parts." He further contended the victim was lying when she said his lips had on three or more earlier occasions touched her genitals.

Finally, defendant testified concerning his physical condition at the time of the police questioning. Defendant claimed that during the interview he was wearing an "infusion pump" which pumped certain medications into his arm, making him nauseated and weak; he also stated he was ingesting painkillers and metabolism regulators, which made him tired. Lastly, defendant testified that at the time of the interview, he was not working and was confined to the house, although he was able to get up and walk around by himself. He was being seen by a visiting nurse two to three times a week. To support his testimony concerning his physical condition, defendant offered the testimony of an acquaintance, Juliana Massman. Massman testified she visited defendant at home four to five times about one or two weeks after his discharge from the hospital. During those visits, defendant had trouble breathing and had difficulty following a conversation, because he easily lost his train of thought.

Defendant at trial contended he remembers only "bits and pieces" of his conversation with Fowler. He testified he does not remember asking Fowler whose name the initials in the arrest warrant represented, and he does not remember being asked about touching or kissing the victim's genitals. The interview lasted approximately thirty to forty-five minutes, during which, according to defendant, Fowler was "compassionate and understanding."

After deliberating for thirty minutes, the jury returned a verdict finding defendant guilty of sodomy and assessed a punishment of ten years' imprisonment. The trial court overruled defendant's motion for new trial and sentenced him in accordance with the jury's assessment.

Defendant raises twelve points. In his first five points, he contends the trial court

3. Nothing in the record supports defendant's contention that the nods were "slight."

erred in (1) overruling his motion for judgment of acquittal, because there was insufficient evidence of his guilt; (2) overruling his objection to the use of leading questions in the state's direct examination of the victim's friend; (3) overruling his motion to suppress his statements to Officer Fowler; and (4–5) permitting the victim to testify she had engaged in prior sexual acts with defendant. Defendant's points six through twelve concern the trial court's denial of his Rule 29.15 motion after an evidentiary hearing.

## I. Direct Appeal

In his first point, defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence, because the state failed to make a submissible case. In determining whether sufficient evidence supports the verdict, we review all substantial evidence and inferences therefrom in a light most favorable to the verdict, disregarding all contrary evidence and inferences. *State v. Cody*, 800 S.W.2d 750, 752 (Mo.App.1990).

■ Defendant first contends the testimony of A.B. required corroboration, citing *State v. Bursley*, 548 S.W.2d 586 (Mo.App. 1976). While it is true that corroborating evidence must be adduced when the testimony of a *complaining witness* in a rape or sodomy prosecution is contradictory or unconvincing,[4] *id.* at 588, "[a] defendant is not entitled to a judgment of acquittal because of discrepancies or conflicts in the testimony of the state's witnesses." *Cody*, 800 S.W.2d at 753. The jury is to resolve any inconsistencies, and the testimony of a single witness, even if inconsistent, may be considered sufficient. *Id.* Further, contradictions do not prevent a witness' testimony from constituting substantial evidence. *State v. Rodney*, 760 S.W.2d 500, 503 (Mo. App.1988).

Defendant contends these cases are distinguishable because none involves a victim who has no recollection of her victimization. We decline to distinguish the cases on that basis and find support for their rationale as applied to this case. The victim did not deny she was sodomized, as defendant contends. Rather, she testified she "doesn't remember" whether defendant sodomized her on the date in question, although she did recall at least three prior sodomitic incidents involving defendant. The jury was entitled to weigh this testimony in light of the other evidence adduced at trial, including the prior abuse, the longstanding relationship between defendant and the victim, and the testimony of A.B. that defendant woke the victim late at night in order to engage in the sodomy. It is not our function to substitute our judgment for that of the jury. *Cody*, 800 S.W.2d at 752. Conflict between the victim's testimony and that of other witnesses does not trigger application of the corroboration rule. *State v. Daniel*, 767 S.W.2d 592, 593 (Mo.App.1989); *State v. Ellis*, 710 S.W.2d 378, 382 (Mo.App.1986).

Further, evidence corroborating the testimony of a complaining witness is only required when the testimony is so inherently contradictory or in conflict with physical facts, surrounding circumstances, and common experience that its validity is rendered doubtful. *Cody*, 800 S.W.2d at 753. Even if we were to subject the testimony of state witnesses other than the prosecutrix to the rule requiring corroboration, A.B.'s testimony is not so contradictory and unconvincing as to invoke the rule.

Defendant makes two attacks on A.B.'s testimony. First, he cites her contradictory testimony concerning whether defendant or the victim removed the victim's underwear.[5] Second, defendant contends A.B.'s testimony that defendant kissed the victim's genitals cannot coincide with her

---

**4.** See *State v. Ellis*, 710 S.W.2d 378, 380 (Mo. App.1986), for a discussion of cases criticizing the corroboration rule.

**5.** Although upon cross-examination A.B. testified the victim removed her own underwear, nowhere in her testimony does she state, as

defendant alleges, that the victim "assisted in the sodomy" by doing so. To the extent this characterization implies defendant is somehow less culpable because his nine year-old victim removed her own underwear at his request, we reject it outright.

testimony that the lights were off and that she was looking at the ceiling or her eyes were closed part of the time defendant was engaged in the sodomy.

Any inconsistencies in A.B.'s account of the sodomy are clearly distinguishable from the drastically varying accounts given by the victims in *Bursley*, 548 S.W.2d 586, upon which defendant relies. Further, defendant in making his arguments fails to recognize that A.B. never testified she watched defendant the entire time he was sodomizing the victim. He also fails to note A.B.'s testimony that defendant was the only adult in the house at the time of the sodomy, that the door to the hallway was open, that she saw defendant enter the room and heard him speak to the victim, and that, although she couldn't see his face, the shape of the person entering the room was the same as that of defendant. Defendant presents only an issue of credibility, which the jury resolved against defendant.

■ As a second prong in his attack on the sufficiency of evidence, defendant contends his confession did not constitute evidence of the crime charged, in that it lacked corroboration, it was not an admission of sodomy, and the interrogation leading to the confession was vague and the responses nonverbal.

It is true that absent independent proof (corroboration) of the corpus delicti, defendant's confession would not have constituted sufficient evidence to sustain a conviction. *State v. Hooker*, 791 S.W.2d 934, 935 (Mo.App.1990). However, we find sufficient corroboration in the testimony of A.B. and the victim's testimony concerning defendant's prior sexual abuse. *See State v. Graham*, 641 S.W.2d 102, 105 (Mo. banc 1982) (prior acts of "lascivious familiarity" not amounting to intercourse tend to show the "relationship between the parties and the probability that the parties committed the specific act charged ..., or as corroborative evidence...."); *State v. Bascue*, 485 S.W.2d 35, 37 (Mo.1972).

Further, we do not find defendant's confession lacking in indicia of reliability, as defendant contends. Defendant makes

much of the fact that Deputy Fowler testified from memory at trial, since the interview was not recorded and defendant did not make a written statement. While this is true, Fowler took contemporaneous notes of the interview which he used at trial to refresh his recollection of the questioning, and the case was the only sodomy he had investigated as deputy sheriff of Osage County. Although Fowler did not question defendant concerning specific dates, he did question him about specific incidents and read him the arrest warrant, which noted the victim's initials and the month and year the sodomy was alleged to have occurred. Further, defendant nodded when confronted about touching and kissing the victim's genitals; he did not remain silent as he did when asked about the "spin the bottle" game, but gave an affirmative, nonverbal response. Lastly, although defendant did not openly admit he committed the sodomy, he did state he felt his heart condition was "God's way of punishing him for what he had done"; defendant made this statement after Fowler questioned him about kissing the victim between her legs. The state made a submissible case, and defendant's first point is denied.

In his second point, defendant contends the trial court erred in overruling his objections to certain leading questions in the state's direct examination of A.B. We find no error.

■ It is largely within the trial court's discretion to permit leading questions and, absent abuse, its determination will not constitute reversible error. *State v. Johnson*, 663 S.W.2d 265, 268 (Mo.App.1983). In making the determination, much depends upon circumstances and the subject matter of the questions. *State v. Branom*, 689 S.W.2d 778, 780 (Mo.App.1985).

■ In the instant case, the trial court appears to have sustained one of defendant's objections and overruled two others, twice admonishing the prosecutor regarding the leading form of his questioning. A.B. testified concerning the details of defendant's sodomy of her friend, the victim, while the victim was lying in bed beside

her. Further, although A.B. was not the victim of defendant's charged conduct in this case, she testified that he had touched her during the strip "spin the bottle" game he had initiated earlier in the evening, and that she had seen him ejaculate. A.B. was twelve years old at the time of trial, and the state indicated she testified pursuant to a subpoena. In light of the surrounding circumstances and subject matter of the questioning, we find no abuse of discretion in this case. Point two is denied.

In his third point, defendant contends the trial court erred in failing to suppress his confession. In his pretrial motion, defendant contended he "was receuperating [sic] from serious heart surgery, was under medication, and due to these circumstances, did neither knowingly or voluntarily waive any right to an attorney or to remain silent and was not physically and mentally able to make any voluntary waiver on his behalf." After an evidentiary hearing, the trial court overruled defendant's motion without making findings. Defendant objected at trial to the admission of testimony concerning the confession, and he included in his motion for new trial an allegation that defendant's confession was not voluntarily or knowingly given. Thus, he has properly preserved the issue for our review. *See* *State v. Hankins*, 801 S.W.2d 781, 783 (Mo. App.1991).

In reviewing a trial court's ruling on a motion to suppress, we must affirm if the evidence is sufficient to sustain the court's finding. *State v. Weems*, 800 S.W.2d 54, 56 (Mo.App.1990). The evidence adduced at the suppression hearing was largely the same as that introduced at trial. On September 7, 1989, Deputy Fowler and another officer proceeded to defendant's home to interview defendant; defendant invited the officers inside. Prior to any questioning, Fowler advised defendant of his *Miranda* rights. After asking Fowler to repeat one of the rights, defendant indicated he understood them and was willing to discuss "what had happened." Fowler testified defendant nodded when asked whether he had touched and kissed the victim's genitals; discussed "his feeling that his heart problems was [sic] God's way of punishing

him for what he had done"; explained that he felt like a "father figure" to the victim; and related the victim's name. Defendant testified he did not "really" remember Fowler's questions or his own responses.

Defendant never asked for an attorney or asked that the questioning be discontinued, and he never stated he did not wish to answer questions. Defendant was not handcuffed during the interview and was free to walk around the room. Defendant stated Fowler was "trying to be reassuring or compassionate" in telling him that "this type of thing" happened all the time and that defendant could get help for it. Further, when asked whether Fowler had threatened him during the interview, defendant stated, "I felt one time he got just loud, you know, to dramatize his question, perhaps." The questioning lasted thirty to forty-five minutes; defendant grew tired and asked the officers to leave, and they asked him no more questions. Defendant was not taken into custody that day.

Defendant had undergone heart surgery roughly two weeks prior to the interview. Defendant testified he was wearing an intravenous pump at the time of the interview which periodically pumped penicillin and a bacteria-killing medicine into his arm. He also stated his oral medications made him tired and nauseated when he ingested them. Finally, defendant testified that at the time of the interview, he was tired, weak, stressed, and overwhelmed; defendant stated he was holding his chest and coughed a few times, but made no complaints during the interview concerning his medical problems. Defendant's acquaintance, Juliana Massman, testified that defendant after his surgery was weak and in pain, had problems moving, and could not remember or sometimes did not understand what was said to him.

Lastly, Fowler testified that although defendant moved very slowly, he talked well, was coherent, and had no problems rising or walking. Further, defendant did not appear to be under any physical stress and was not perspiring; although his breath had a slight rasp, it did not seem to bother him a great deal. Fowler testified that the

responses defendant made were identifiable, and that defendant was aware of where he was and did not appear to have difficulty remembering "certain things."

 The state bears the burden of proving the voluntariness of a confession; however, it need only be proved by a preponderance of the evidence. *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986). The test for the voluntariness of a confession is whether, under the totality of the circumstances, defendant was deprived of a free choice to admit, deny, or refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *State v. Sumowski*, 794 S.W.2d 643, 646 (Mo. banc 1990); *State v. Anderson*, 800 S.W.2d 465, 467 (Mo.App. 1990). The Supreme Court has focused on the "crucial element of police overreaching" in determining the voluntariness of confessions under the Fifth Amendment. *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473, 482 (1986). Therefore, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484; *State v. Bittick*, 806 S.W.2d 652, 658 (Mo. banc 1991).

Nothing in the record even remotely hints at the presence of coercion, intimidation, or physical deprivation. *See Bittick*, 806 S.W.2d at 658; *State v. Garner*, 799 S.W.2d 950, 959 (Mo.App.1990). Under the totality of circumstances as outlined above, the state has proven the voluntariness of the confession by a preponderance of the evidence.

 Even if voluntary, however, the question remains whether the confession was knowingly made. *See Bittick*, 806 S.W.2d at 658. Nothing in the record indi-

cates defendant's condition so affected his mental capacity that he failed to appreciate the nature of his confession or know or understand what he was saying. In essence, defendant contends his weakened state and the medications he was ingesting rendered him mentally impaired or "intoxicated" at the time of the police interview. However, "intoxication at the time of making a statement or confession does not, at least where the intoxication, in the words of some cases, does not amount to mania, require that the statement be excluded because it is involuntary or not made knowingly and intelligently. Rather, the fact of intoxication goes to the weight and credibility to be accorded the statement." *State v. Gullett*, 606 S.W.2d 796, 807 (Mo.App. 1980). Moreover, the confession itself contains nothing irregular or unusual as, for example, inconsistencies which would support a finding defendant was mentally impaired.

Any conflicts in the evidence regarding the motion to suppress were for the court to resolve, and we recognize its superior ability to judge the witnesses' credibility. *Lytle*, 715 S.W.2d at 915. The trial court in considering the evidence was entitled to believe Fowler's testimony that defendant talked well, was coherent, and gave identifiable responses. We find sufficient evidence to sustain the court's ruling on defendant's motion to suppress. Point three is denied.

 In his fourth and fifth points, defendant alleges the trial court erred in allowing the victim to testify she had engaged in prior sexual acts with defendant.[6] Defendant contends the introduction of the evidence is prohibited by § 491.015 RSMo 1986 (the "rape shield" statute). Further, he argues the testimony constitutes evidence of other crimes for which he was not charged, that it does not fall within any

---

6. The trial was held on February 1 and 2, 1990. Although the victim gave no testimony concerning the dates of the prior acts, the record indicates the victim's mother met defendant approximately six years before trial and introduced the victim to defendant "later on." Defendant lived with the victim's family four years and contin- ued to see the children after the victim's mother moved to a separate residence approximately two years before trial. The conduct forming the basis of the subject offense occurred in May, 1989, and the three instances of prior sexual contact occurred prior to that date.

exception to the rule against the admission of "other crimes" evidence, and that its prejudicial effect outweighs its probative value.

At trial, defendant failed to object on the basis of § 491.015 to the admission of the evidence; further, his motion for new trial included no allegation of error referencing the statute. When a party on appeal raises a different reason as to why evidence should be excluded than was presented at trial, nothing is preserved for appellate review. *State v. Reynolds*, 782 S.W.2d 793, 795 (Mo.App.1989). Defendant has not preserved his fourth point. Finding no manifest injustice or miscarriage of justice, we decline to review it for plain error. Rule 30.20. Accordingly, point four is denied.

■ Further, we reject the argument in defendant's fifth point that evidence of the separate sexual acts constitutes inadmissible "other crimes" evidence. Generally, evidence of criminal acts other than the ones for which a defendant is on trial are inadmissible. *State v. Courter*, 793 S.W.2d 386, 388 (Mo.App.1990). However, such evidence is admissible if it tends to establish motive, intent, identity, absence of mistake or accident, or a common scheme or plan. *State v. Kerr*, 767 S.W.2d 344, 345 (Mo. App.1989). In cases involving sexual abuse of children, we have also recognized a distinct "depraved sexual instinct" exception to the general rule. *State v. Lachterman*, 812 S.W.2d 759, 768 (Mo.App.1991). That exception permits the introduction of evidence that a defendant committed similar acts of sexual abuse with children of the same sex as the victim, providing the acts occurred near in time to the act charged. *Id.* at 768–69. Currently, the trend is toward the liberal admission of prior sex crimes evidence under one of the stated exceptions. *Kerr*, 767 S.W.2d 344, 345.

"Where a defendant is charged with committing a sexual crime against a child, evidence of acts of sexual misconduct committed at other times by defendant against the same victim is generally admissible." *State v. Robertson*, 816 S.W.2d 952, 954 (Mo.App.1991) (citations omitted). Prior sexual activity between a defendant and a child victim is relevant to show the defendant's sexual desire for the victim and tends to establish a motive for commission of the sexual act for which defendant is on trial. *State v. Barnard*, 820 S.W.2d 674, 678 (Mo.App.1992); *Lachterman*, 812 S.W.2d at 766–67. We find the challenged evidence admissible pursuant to this exception.

Defendant argues the motive exception has no application here, because although the victim recalled the prior instances of sexual contact, she testified she does not remember defendant committing the act for which he was charged. In so arguing, defendant ignores the evidence independent of the victim's testimony that tended to establish defendant's commission of the subject crime. Essentially, defendant is arguing the prejudicial effect of the "other crimes" evidence is greater in this case than in cases wherein the victim testifies to the details of the defendant's charged act. We find the probative value of the evidence outweighs its prejudicial effect. The acts were not so remote in time to be of little or no probative value in the subject prosecution.

Because we find the evidence properly admissible to establish defendant's motive and sexual desire for the victim, we need not determine the applicability of the "depraved sexual instinct" exception. *See Barnard*, 820 S.W.2d at 678. Defendant's fifth point is denied.

## II. 29.15

In points six through twelve, defendant appeals from the motion court's denial of his Rule 29.15 motion after an evidentiary hearing. Our review of the denial is limited to a determination of whether the findings, conclusions, and judgment of the motion court are "clearly erroneous." Rule 29.15(j). The findings, conclusions, and judgment are "clearly erroneous" only if a review of the entire record leaves an appellate court with the definite and firm impression a mistake has been made. *Moton v. State*, 772 S.W.2d 689, 691 (Mo.App. 1989).

█ In point six, defendant contends trial counsel was ineffective in failing to interview and call several witnesses to rebut the state's evidence that defendant was coherent and responsive at the time of his confession. In order to establish his counsel was ineffective, defendant must demonstrate that counsel's performance was unreasonable under prevailing professional norms, and that defendant was prejudiced thereby. *State v. Fraction,* 782 S.W.2d 764, 769–70 (Mo.App.1989). Prejudice must be affirmatively proved, and is demonstrated by proof that, "but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different." *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). We need not address both the performance and prejudice claims if defendant makes an insufficient showing on one, and if it is easier to dispose of a case on the ground of lack of sufficient prejudice, that course should be followed. *Id.* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

█ First, defendant contends his counsel was ineffective in failing to interview and call his heart surgeon, Dr. Lenard Politte, to testify concerning defendant's medical condition at the time he was interviewed by police. Defendant contends the testimony would "certainly have been sufficient to raise a reasonable doubt" regarding the reliability of defendant's confession. We find no reasonable probability the result of the trial would have been different had trial counsel presented Politte's testimony.

At the evidentiary hearing on the motion, defendant offered Politte's deposition into evidence.[7] At the deposition, Politte testi-

fied he replaced defendant's aortic valve on August 9, 1989. Defendant was discharged from the hospital on August 23, and Politte last saw defendant on September 6, 1989, the day before defendant's interview with police.

Politte testified that after bypass surgery, it is common for patients to experience a slowing of cerebral function in varying degrees. Politte stated that although defendant was always oriented to time, place, and person, his responses to questions were rather slow. Politte also testified defendant was not an "extremely bright, sharp individual" throughout his treatment and especially after the surgery. Politte qualified his comments by stating that defendant's responses to questions were appropriate, and that he did not know whether defendant was "dull" before the surgery as well as after. Further, Politte stated defendant was making adequate progress at the time he was discharged from the hospital and was functioning "reasonably normally" six weeks after surgery.

Lastly, Politte testified concerning the potential side effects of the medications defendant was ingesting during his recovery. One medication, Zantac, can cause nervous irritability and anxiousness; defendant was taking Zantac in September of 1989. Depression is a common side effect of some of defendant's other medications, and they can cause "a little slowing of body processes." Finally, one medication, Gentamycin, can cause kidney infection, dizziness, anxiety, hallucinations, and confusion. Defendant experienced some dizziness shortly after surgery; however, he was not taking Gentamycin in September of 1989.

Although Politte's testimony is somewhat corroborative of defendant's testimo-

---

7. The state made no objection to the offer of the deposition but now contends the motion court took no judicial notice of it. The court stated it had not yet read the deposition, so it would have to be "enlightened" as to specific pages if the deposition contained material which would bear on other evidence. Although defendant contends he noted specific pages of the deposition in his brief to the motion court, he failed to

include the brief in the record on appeal. In any event, the court in its findings indicated it had reviewed all of the evidence adduced at the hearing, and we find nothing that indicates otherwise. Contrary to the state's suggestion, nothing in the court's comment at the hearing indicates it had no intention of reading the full deposition.

ny and the testimony of his friend concerning defendant's physical and mental state at the time of the police interview, we find no reasonable probability his testimony would have produced a different result at trial. Importantly, Politte's testimony was not in the nature of alibi evidence. At best, the testimony would serve only to impeach the credibility of Fowler, the investigating officer, concerning his observations of defendant's condition at the time of the confession. A trial counsel's decision not to call a witness defendant requested does not constitute ineffective assistance of counsel if the witness' testimony would serve only to impeach a state's witness. *State v. Anderson,* 785 S.W.2d 596, 601 (Mo.App.1990). In considering the totality of evidence before the jury, we find no reasonable probability Politte's testimony would have altered the outcome of the trial. *See State v. Rounds,* 796 S.W.2d 84, 87 (Mo.App.1990).

Next, defendant contends his counsel was ineffective in failing to call defendant's parents and visiting nurse, Marsha Crawford, to testify concerning defendant's mental and physical condition at the time of his statement to police.

■ Generally, an attorney's choice of witnesses and decision not to call a witness is virtually unchallengeable and will not support a finding of ineffective assistance of counsel. *Anderson,* 785 S.W.2d at 601. Defendant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy, *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695, and counsel is entitled to use his best judgment in making strategic decisions. *Stuckey v. State,* 756 S.W.2d 587, 593 (Mo. App.1988).

At the evidentiary hearing on defendant's motion, the court received Crawford's testimony without objection. However, defendant failed to include in his motion any claim for relief with respect to trial counsel's failure to interview and call Crawford. Accordingly, he was waived any consideration of the issue and has forfeited any remedy available for this additional claim. Rule 29.15(d); *Kelly v. State,*

784 S.W.2d 270, 273 (Mo.App.1989); *Rohwer v. State,* 791 S.W.2d 741, 744 (Mo.App. 1990).

■ We turn to defendant's claim concerning his counsel's failure to call defendant's parents as witnesses. At the evidentiary hearing on the motion, defendant's parents testified that after his surgery, defendant lacked concentration, was slow in responding to questions, was not thinking clearly, and had a tendency to forget. Counsel explained he decided not to call defendant's mother because she spoke of "side issues" each time he contacted her, and he was afraid of what she might say at trial. Counsel described Mrs. Loaiza as an "unknown quantity" he would only call if the case was not proceeding well. Further, counsel testified he did not call defendant's father because he was aware of reports from the Division of Family Services that defendant's father had been involved in the molestation of other family members. Although counsel could not verify a conviction resulting from the conduct, he was concerned the information would have a "devastating effect" on defendant's case. Defendant has failed to overcome the presumption his counsel's decision was based upon sound trial strategy. Defendant's sixth point is denied.

■ In point seven, defendant contends his trial counsel was ineffective in failing to preserve for review an issue concerning the alleged bias of a venireperson the trial court failed to strike for cause. The record indicates counsel requested the court to strike the venireperson. However, counsel made no response or objection when the court indicated the venireperson "said she could try to be fair," nor did he include the issue in his motion for new trial.

Post-conviction relief for ineffective assistance of counsel is limited to errors which prejudiced the movant by denying him the right to a fair trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Failure to object to improper jury selection methods could in a proper case constitute ineffective assistance of counsel affecting the fairness of a

criminal trial. *Kirk v. State*, 778 S.W.2d 661, 662 (Mo.App.1989). However, defendant states nothing in his point relied on or argument claiming his trial counsel's failure to object had any effect on the fairness of his trial. Rather, he contends only that counsel's inaction affected his ability to appeal the conviction, a claim not cognizable under Rule 29.15. *Id.* Point denied.

In his eighth point, defendant cites a number of alleged errors he contends cumulatively deprived him of a fair trial: (1) an improper definition of reasonable doubt by the prosecutor; (2) the prosecutor's characterization of prosecution witnesses as "victims" during voir dire; (3) the prosecutor's improper attempt to commit the jury to a guilty verdict during voir dire; (4) the prosecutor's attempt to link defendant with sex crimes committed by persons in the state of California; and (5) remarks by defendant's trial counsel conveying the notion that defendant admitted committing the offenses charged. Defendant concedes that "taken in isolation, each of these errors might be said to be harmless." However, he contends their cumulative effect created a "bias against the [d]efendant which could not be overcome."

Although defendant in his point relied on contends the errors resulted in a denial of his right to a fair trial, his claim becomes one of ineffective assistance of counsel in the argument portion of his brief. Further, defendant's 29.15 motion separately set forth each alleged error, and nowhere did he raise the "cumulative harmless error" theory he now propounds. Nevertheless, we have carefully reviewed the record with respect to each of the alleged errors and find no affirmative proof that, but for the alleged errors, there was a reasonable probability the result would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Sidebottom*, 781 S.W.2d at 796. Point eight is denied.

In his ninth point, defendant contends his trial counsel was ineffective for failing to inquire into the prospective jurors' potential bias against Hispanics. At the evidentiary hearing, trial counsel stated he did not inquire into the potential bias because, in his experience, jurors were not willing to admit racial bias on voir dire, and such bias was difficult to determine other than through direct questioning. Counsel stated he thought the questioning would therefore not have been helpful and would have highlighted any existing prejudice. The state contends counsel was pursuing a reasoned trial strategy; defendant contends counsel's explanation was self-serving and typical of his "head in the sand" approach to the case.

We need not consider whether counsel's failure to question the prospective jurors on this issue constituted proper trial strategy, because defendant offers no evidence he suffered prejudice as a result of the failure. Unless a defendant both shows his trial counsel's performance was deficient and demonstrates the deficient performance prejudiced the defense, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Defendant's contention he has "reason to believe that the population from which the panel was selected was prejudiced" is nothing more than pure conjecture and does not constitute a showing of prejudice. Point denied.

Next, defendant contends his trial counsel was ineffective in failing to adequately prepare for trial. Specifically, defendant alleges counsel was deficient in failing to take statements from adverse witnesses, failing to prepare defendant for trial, and failing to inquire into A.B.'s reputation.

Again, defendant's argument consists of mere conclusory allegations with no attempt to demonstrate how counsel's alleged errors prejudiced his defense. He points to the amount of time counsel spent interviewing prosecution witnesses but fails to allege how his case was prejudiced by the allegedly limited contact. He contends counsel filed certain motions without his knowledge or consent but fails to offer any evidence that the motions were unreasonable or detrimental to his case. He

casually alleges that counsel's preparation of defendant for trial was "skimpy at best," but in no way demonstrates how the outcome of the trial would have been different had counsel spent more time preparing defendant.[8] Lastly, defendant contends counsel was ineffective for failing to call several witnesses to impeach A.B.'s credibility, but makes no attempt to show how he was prejudiced thereby. Further, he makes no response to the state's contention that defendant's counsel made a reasoned strategic decision, of which defendant approved, to attack A.B.'s credibility through cross-examination rather than mount a direct attack on the child witness and risk alienating the jury. Defendant has failed to meet the *Strickland* test for ineffective assistance of counsel, and his tenth point is denied.

 In his next point, defendant contends the motion court erred in failing to enter specific findings of fact and conclusions of law with respect to each of defendant's allegations of error. Rule 29.15(i) requires the motion court to issue such findings and conclusions "on all issues presented." However, general findings are sufficient if they allow meaningful appellate review. *State v. Hamilton*, 791 S.W.2d 789, 800 (Mo.App.1990). The findings must be responsive to the matters alleged in the motion, but need not be itemized. *Jackson v. State*, 729 S.W.2d 253, 255–56 (Mo.App.1987). Rather, the findings and conclusions need only be sufficient for an appellate court to determine whether they are clearly erroneous. *Liggins v. State*, 786 S.W.2d 207, 209 (Mo.App. 1990).

The motion court found that defendant's claims concerning his alleged deprivation of the right to an impartial jury panel could have been raised on direct appeal and were unsupported by the facts appearing in the record. With respect to defendant's claims of ineffective assistance of counsel, the court stated it had carefully reviewed the evidence adduced at the hearing and found

counsel's representation "met the standard by which competency is measured," although it was "not on the level that the Courts would like to see in every case." Further, the court found counsel's decisions were ones of "trial tactics," that the "outcome of the case would not have been any different if all the defects now complained of would have been absent," and that defendant "had a fair trial and his defense was put before the jury." We find the motion court's findings sufficient to permit meaningful appellate review, and nothing on this record convinces us the findings and conclusions are clearly erroneous. Point denied.

 In his twelfth and final point, defendant challenges the constitutionality of § 566.060.3 RSMo 1986, the sodomy statute under which defendant was charged and convicted. Defendant contends the statute denies him the equal protection of the law and constitutes an unlawful delegation of legislative power by permitting a prosecutor, through an election of charges, to define a crime and determine the length of its punishment.

Although defendant raised this claim in his 29.15 motion, he failed to include it in his motion for new trial or present the issue on direct appeal. "Generally, a claim of error which could or should have been raised on direct appeal is not cognizable in a post-conviction motion proceeding." *Richardson v. State*, 773 S.W.2d 858, 860 (Mo.App.1989). Even constitutional claims which could have been raised on direct appeal may not be considered in a post-conviction motion except where fundamental fairness requires otherwise, and then only in rare and exceptional circumstances. *Id.; Henderson v. State*, 786 S.W.2d 194, 197 (Mo.App.1990). A post-conviction motion is not a substitute for a direct or second appeal. *Henderson*, 786 S.W.2d at 196. Here, defendant fails to allege or prove the existence of any rare and exceptional circumstances justifying his failure to raise

---

**8.** Defendant contends the lack of preparation caused him to make an important misstatement, which his counsel failed to correct. Although defendant at the hearing first incorrectly stated

he had last seen a doctor nine days prior to questioning by police, he immediately corrected his own testimony, stating, "I had just gotten out of the hospital and then [the police] were there."

this claim on direct appeal; therefore, he is precluded from raising the issue in his motion for post-conviction relief. The motion court's conclusion that the claim could have been raised on direct appeal is not clearly erroneous. Point denied.

The judgments of the trial court and motion court are affirmed.

SMITH, P.J., and KAROHL, J., concur.